UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT MACIOCE, *on behalf of himself and all others
similarly situated,*

                                        Plaintiff,

                -v-

HISENSE USA CORPORATION,

                                        Defendant.

---

25 Civ. 1608 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, United States District Judge:

On December 19, 2025, the Court granted the motion to compel arbitration by defendant

Hisense USA ("Hisense") and stayed this action pending the outcome of arbitration. *See* Dkt. 58

("Decision"). Plaintiff Robert Macioce now moves for certification for an interlocutory appeal

of that decision. *See* Dkt. 59. For the reasons that follow, the Court denies Macioce's motion.

## I.    Background

The Court assumes familiarity with the background of this case. Macioce brings claims

against Hisense, a TV manufacturer, including false and deceptive advertising under New York

General Business Law ("NYGBL") §§ 349–50. *See* Dkt. 34 ("Amended Complaint" or "AC").

He alleges that he purchased a Hisense TV using his Best Buy mobile application, and that

Hisense falsely represented to him that its TVs use certain display-enhancing technology.

Hisense moved to compel arbitration, arguing that Macioce agreed to submit his claims for

arbitration at multiple points, including while buying his TV and later while installing it and

accepting the TV's end user license agreement ("EULA"). Dkt. 42.

The Court granted that motion, finding that Macioce had entered into three agreements

containing arbitration provisions requiring him to arbitrate his claims against Hisense. Decision

at 12. These were: (1) the Best Buy loyalty terms, which Macioce assented to as an undisputed Best Buy account holder, ("Loyalty Terms"), (2) the BestBuy.com Terms & Conditions ("Best Buy Terms"), and (3) the EULA. *Id.* As to each, the Court examined "whether the parties entered into an agreement or agreements to arbitrate and whether such encompass the claims Macioce brings here," found the arbitration clauses to "unambiguously cover[] the instant dispute," and rejected Macioce's counter-arguments. *Id.* at 12–18.

On January 20, 2026, Macioce moved for certification of an interlocutory appeal. Dkt. 59. On February 10, 2026, Hisense opposed. Dkt. 62. On February 17, 2026, Macioce replied. Dkt. 64.

## II.    Applicable Legal Standards

Under 28 U.S.C. § 1292(b), a district court, in its discretion, may certify an interlocutory appeal where the decision at issue (1) involves a controlling question of law (2) as to which there is substantial ground for a difference of opinion and (3) as to which an immediate appeal may materially advance the ultimate termination of the litigation. *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 46–47 (1995). Certification is appropriate only when a case presents "exceptional circumstances" warranting interlocutory review. *See Laurent v. PricewaterhouseCoopers LLP*, No. 6 Civ. 2280, 2014 WL 251986, at *1 (S.D.N.Y. Jan. 22, 2014) (cleaned up); *accord Klinghoffer v. S.N.C. Achille Lauro Ed Altri–Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir. 1990) ("[I]t continues to be true that only 'exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978))). "[F]ederal practice strongly disfavors discretionary interlocutory appeals as they prolong judicial proceedings, add delay and expense

to litigants, burden appellate courts, and present issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions." *SEC v. Straub*, No. 11 Civ. 9645, 2013 WL 4399042, at *2 (S.D.N.Y. Aug. 5, 2013) (cleaned up).

The party moving for interlocutory certification bears the burden of demonstrating that all three substantive criteria of § 1292(b) are met. *Al Maya Trading Est. v. Global Exp. Mktg. Co.*, No. 14 Civ. 275 (PAE), 2014 WL 3507427, at *12 (S.D.N.Y. July 15, 2014) (citation omitted). "When a ruling satisfies these [three] criteria and 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal.'" *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009)).

As to the first requirement, the question presented for certification must be "a controlling question of law." A question is "controlling" if it would either "terminate the action" or at least "materially affect the litigation's outcome." *Consub Del. LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007), *aff'd*, 543 F.3d 104 (2d Cir. 2008). A question is "not controlling if plaintiffs have independent and alternative grounds for pursuing their claims." *Laurent*, 2014 WL 251986, at *1 (cleaned up). The question must also be "a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Consub Del.*, 476 F. Supp. 2d at 309 (cleaned up).

As to the second requirement, § 1292(b) requires "substantial ground for difference of opinion" regarding the controlling question of law. "A substantial ground for difference of opinion exists when '(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit.'" *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 539 (S.D.N.Y. 2014) (quoting *Capitol Records v. Vimeo*,

972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013)).  "[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996).

Finally, as to the third requirement, the "use of § 1292(b) is reserved for those cases where an intermediate appeal may avoid protracted litigation." *Koehler v. Bank of Bermuda*, 101 F.3d 863, 865–66 (2d Cir. 1996).  District courts should hesitate to certify where "many of the same . . . issues . . . would still have to be litigated" irrespective of the Court of Appeals' decision on the certified question. *Westwood Pharms., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 88 (2d Cir. 1992).

## III.    Discussion

Macioce seeks to certify two questions for interlocutory review: (1) whether Section 2 of the Federal Arbitration Act ("FAA") authorizes a court to compel arbitration of claims pursuant to an arbitration clause in a contract when the subject matter of that contract is "wholly unrelated to the claims at issue," and (2) "whether the Court applied the correct legal test for application of equitable estoppel against plaintiff [] under Minnesota law." Mot. at 8 (cleaned up).  Neither question satisfies § 1292(b)'s standards.

### A.    Macioce's Section 2 Argument

Macioce notes that the FAA authorizes a court to compel arbitration only if the arbitration agreement falls within Sections 1 and 2 of the FAA. *Id.* at 9.  He argues that the EULA and Best Buy Terms do not do so because his claims "do not arise out of either agreement." *Id.* (cleaned up).  He proposes to certify for interlocutory appeal the question whether Section 2 authorizes compelling the arbitration of claims "wholly unrelated" to the subject matter of an arbitration agreement. *Id.* at 9–10.  Macioce posits that this Court did not

4

consider this argument and that, had it done so, it would not have ordered arbitration. *Id.* at 7, 9–10. For multiple reasons, these arguments do not justify interlocutory appeal.

First, the question Macioce poses is not "a controlling question of law." 28 U.S.C. § 1292(b). Questions regarding the "application of the appropriate law to the relevant facts" are generally "not suitable for certification under § 1292(b)." *Sec. & Exch. Comm'n v. Coinbase, Inc.*, 761 F. Supp. 3d 702, 714 (S.D.N.Y. 2025) (cleaned up). Nor are "mixed questions of law and fact . . . appropriate for certification under § 1292(b)." *Freeman v. Nat'l Broad. Co.*, No. 85 Civ. 3302, 1993 WL 524858, at *2 (S.D.N.Y. Dec. 15, 1993); *In re Facebook, Inc.*, 986 F. Supp. 2d at 536 (certification requires "a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record" (cleaned up)).

Here, the question Macioce poses—and its premise that his claims are unrelated to the arbitration agreements into which he entered—inherently turn on applying law to facts. It would require a reviewing court to assess whether his claims arise out of the EULA, the Best Buy Terms, or some other agreement. Mot. at 10. Such would entail factual analysis—at a minimum, examining the text of each arbitration agreement and applying it to the claims at issue, and arguably examining (as this Court did in compelling arbitration) whether Macioce had notice thereof. Certification under § 1292(b) is thus not appropriate. *See, e.g.*, *In re Anderson*, 550 B.R. 228, 237 (S.D.N.Y. 2016) (interpretation and enforceability of arbitration provision "is not appropriate for certification under § 1292(b), as it is not a pure question of law that the reviewing court could decide without knowledge of the record" (cleaned up)); *Teta v. Go New York Tours*, No. 24 Civ. 1614, 2024 WL 4850844, at *3 (S.D.N.Y. Nov. 21, 2024) (same).

Also unpersuasive is Macioce's argument that his proposed question is "a controlling question of law" because its resolution would "dictate[] the forum in which [he] and the

proposed class will be able to litigate their claims." Mot. at 11. Courts in this District have often held interlocutory challenges to orders compelling arbitration to fall short of a "controlling question of law," notwithstanding that they decide the forum for litigation. *Dill v. JPMorgan Chase Bank, N.A.*, No. 19 Civ. 10947, 2021 WL 3406192, at *4–5 (S.D.N.Y. Aug. 4, 2021) ("the potential for reversal of an order granting a motion to compel arbitration does not raise a 'controlling question of law'"); *Lopez v. Lidl US*, No. 22 Civ. 4271, 2024 WL 1329776, at *2 (S.D.N.Y. Mar. 28, 2024) (same); *Murray* v. *UBS Secs.*, No. 12 Civ. 5914, 2014 WL 1316472, at *4 (S.D.N.Y. Apr. 1, 2014) (same).

Macioce's suggestion that the Court did not address this argument in resolving Hisense's motion to compel arbitration is also off base. In fact, the Court specifically examined whether Macioce's claims arose out of the arbitration agreements. *See* Decision at 13, 16–19. To this end, it reviewed the text of (i) the Loyalty Terms (ii) the Best Buy Terms, and (iii) the EULA. And Macioce's arguments as the application of these agreements recycle arguments he made in opposing the motion to compel. "A mere claim that a district court's decision was incorrect does not suffice to establish substantial ground for a difference of opinion." *Flynn v. Cable News Network, Inc.*, 621 F. Supp. 3d 432, 442 (S.D.N.Y. 2022) (quoting *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 426 F. Supp. 2d 125, 129 (S.D.N.Y. 2005)).

As to the Loyalty Terms, the Court noted, its arbitration provision committed Macioce to arbitrate any dispute, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, including disputes "arising from the advertising of, or the sales practices related to, such products and services." *Id.* at 13–14 (quoting Loyalty Terms). Because Macioce's NYGBL claims sounded in deceptive marketing practices and false advertising, they qualified as claims "based in . . . statute, fraud, misrepresentation or any other legal theory," and

as ones "arising from the advertising, or the sales practices related to" the product. *Id.* at 13. As to the Best Buy Terms, the Court noted that their arbitration clause was "identical" to the one in the Loyalty Terms. *Id.* at 19. As such, the same analysis and conclusion—that the NYGBL claims fell within the scope of the provision—applied. And, finally, as to the EULA, the Court examined whether its arbitration provision applied to Macioce's claims. *Id.* at 20–21. The text of the EULA's arbitration clause—which covered disputes with "the broadest meaning enforceable by law"—included "any and all disputes . . . whether presently in existence or based on acts or omissions in the past or in the future, will be resolved exclusively and finally by binding arbitration." *Id.* at 21. The Court thus rejected Macioce's argument that his claims fell outside the clause, noting that the provision reached past "acts or omissions." *Id.* As to each agreement, the Court also noted its broad scope. *Id.* at 13, 16–17, 18. And where an arbitral provision is broad, there arises a "presumption of arbitrability." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 36 (2d Cir. 2002) (cleaned up); *see also Gould v. Japan Pulp & Paper (U.S.A.)*, No. 14 Civ. 7905, 2015 WL 631405, at *2 (S.D.N.Y. Feb. 13, 2015) (presumption of arbitrability can "only" be overcome if it may be said with "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" (cleaned up)); *Zambrana v. Pressler & Pressler, LLP*, No. 16 Civ. 2907, 2016 WL 7046820, at *3 (S.D.N.Y. Dec. 2, 2016) ("if the agreement is broad such that it requires arbitration of "any and all disputes," then "there arises a presumption of arbitrability" (quoting *Edwards v. Macy's Inc.*, No. 14 Civ. 8616, 2015 WL 4104718, at *10 (S.D.N.Y. June 30, 2015)).

Second, even assuming the question identified by Macioce were a "controlling question of law," it is not one as to which there is "a substantial ground for difference." 28 U.S.C. § 1292(b). As Macioce concedes, the Second Circuit has held that Section 2 of the FAA applies

7

to parties' agreements to arbitrate claims "arising out of such contract or transaction." Mot. at 12 (citing *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 121 (2d Cir. 2025) (Perez, J., concurring)). That principle governs here and was applied by this Court. Decision at 11–21. And other courts have held, as did this Court, that arbitration agreements entered at the time of purchase can apply to later-arising claims under GBL §§ 349 and 350. *See, e.g., Genevieve Capolongo v. Spotify USA Inc.*, No. 25 Civ. 9216, 2026 WL 1179653, at *6 (S.D.N.Y. Apr. 30, 2026) (ordering arbitration of claims under §§ 349 and 350 based on acceptance of Spotify's Terms of Use); *Andersen v. Walmart Stores, Inc.*, No. 16 Civ. 6488, 2017 WL 661188, at *11 (W.D.N.Y. Feb. 17, 2017) (ordering arbitration of claims under §§ 349 and 350 where plaintiff accepted Walmart's terms while purchasing laptop).

Macioce's labeling of his arguments as ones of "first impression" also does not establish a substantial ground for difference of opinion. *See, e.g., In re Flor*, 79 F.3d at 284 ("the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion"); *Falberg v. Goldman Sachs Grp., Inc.*, No. 19 Civ. 9910, 2020 WL 7695711, at *4 (S.D.N.Y. Dec. 28, 2020) (same); *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341, 372 (S.D.N.Y. 2012) (same).

Third, it is not correct that an immediate appeal of the decision to compel arbitration will materially advance the resolution of this litigation. On the contrary, courts, in general, have been apt to grant "immediate interlocutory appeals of orders *denying*—but not of orders *granting*— motions to compel arbitration," as such respects Congress's purpose in the FAA to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible. *Smith v. Spizziri*, 601 U.S. 472, 478 (2024) (emphasis in original). Consistent with this, courts in

this District have often denied motions like Macioce's, finding interlocutory appeals of motions to compel arbitration unlikely to materially advance the litigation. *See, e.g., Dill*, 2021 WL 3406192, at *8 (allowing certification of order compelling arbitration "would be inconsistent with the national policy favoring arbitration, and the Second Circuit's distaste for delaying the arbitral process through appellate review" (cleaned up)); *Sacchi v. Verizon Online, LLC*, No. 14 Civ. 423, 2015 WL 1729796, at *4 (S.D.N.Y. Apr. 4, 2015); *Murray v. UBS Sec., LLC*, No. 12 Civ. 5914, 2014 WL 1316472, at *8 (S.D.N.Y. Apr. 1, 2014).

### B.     Macioce's Equitable Estoppel Argument

Macioce next argues that the Court, in addressing the Loyalty Terms and Best Buy Terms, misapplied the Minnesota law of equitable estoppel. Mot. at 14–17. He urges certification of the question of the proper legal test for "the doctrine of equitable estoppel under Minnesota law." *Id.* at 14. For multiple reasons, this bid, too, does not satisfy § 1292(b).

First, Macioce has not identified any conflict between this Court's application of the Minnesota law of equitable estoppel in the context of a motion to compel arbitration and that of the Minnesota courts. The Minnesota Supreme Court, as Macioce admits, has not resolved the test applicable to this circumstance. *Id.* at 7. Macioce appears to fault the Court for citing a Minnesota Court of Appeals decision, *Dominium Austin Partners, LLC v. Lindquist*, which, he notes, predates the Minnesota Supreme Court's decision in *Onvoy, Inc. v. SHAL, LLC*, 669 N.W.2d 344 (Minn. 2003). Mot. at 14–15. But this Court's decision acknowledged *Onvoy*, while relying on other cases to flesh out the appropriate equitable estoppel test, Decision at 15, precisely because, as Macioce concedes, *Onvoy* did not reach that question. *Onvoy* instead left it for the trial court to resolve "the ability of [non-parties] to rely on equitable estoppel to compel arbitration," Mot. at 15 (citing *Onvoy*, 669 N.W.2d at 357, and, *MS Dealer Service Corp. v.*

9

*Franklin*, 177 F.3d 942 (11th Cir. 1999), which was the basis for the decision in *Dominium* that this Court applied).

Second, insofar as the Court drew on Second Circuit law in applying the doctrine of equitable estoppel, Macioce has not identified any conflict between that and Minnesota law. *See* Decision at 15–16. The Minnesota Court of Appeals has held that a non-signatory may compel a signatory to arbitrate where (1) the signatory's claims arise from the obligations in agreements containing arbitration provisions and (2) there is a "close relationship between the signatory and non-signatory parties." *ev3 Inc. v. Collins*, 2009 WL 2432348, at *3–8 (Minn. Ct. App. Aug. 11, 2009). That rule tracks the test this Court applied. *See* Decision at 16 ("the Second Circuit applies a two-part test, in which it evaluates whether (1) the signatory's claims arise under the subject matter of the underlying agreement, and (2) there is a close relationship between the signatory and the non-signatory party" (cleaned up)); *Dominium Austin Partners, LLC*, 2001 WL 950085, at *8 (holding that the "equitable estoppel" rule may compel arbitration for non-signatories when (a) a signatory's claim "makes reference to or presumes the existence of the written agreement" containing the arbitration clause; or (b) the claim involves a close relationship between signatory and non-signatory parties, raising "allegations of substantially interdependent and concerted misconduct" (quoting *Grigson v. Creative Artists Agency*, 210 F.3d 524, 527 (5th Cir. 2000) (quoting *MS Dealer Serv. Corp.*, 177 F.3d at 947))).

Third, certifying the proposed question regarding Minnesota equitable estoppel law would not "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). That is because this question bears only on the Loyalty Terms and Best Buy Terms, which are governed by Minnesota law. *See* Decision at 8 n.6. But the Court separately found that Macioce was bound to arbitrate under the EULA, which is governed by the forum of the user (here, New

York).  *Id.*  A construction of Minnesota law thus would not disturb the Court's application of

the EULA.  *See* Mot. at 14 (challenging application of equitable estoppel to only Loyalty Terms

and Best Buy Terms).  Thus, an appellate ruling on the equitable estoppel question would not

eliminate the obligation to arbitrate.  *See Capri Sun GmbH v. Am. Beverage Corp.*, No. 19 Civ.

1422, 2022 WL 3137131, at *4 (S.D.N.Y. Aug. 5, 2022).  Because the resolution of the

interlocutory appeal would not materially advance the litigation, certification would be improper.

*See, e.g., Doe v. Columbia Univ.*, No. 20 Civ. 6770, 2022 WL 16856158, at *7 (S.D.N.Y. Nov.

10, 2022) (denying certification where there was no basis to find that certified issue could

"possibly" resolve case); *In re Bernard L. Madoff Inv. Sec. LLC*, No. 11 Misc. 337, 2012 WL

5511952, at *3 (S.D.N.Y. Nov. 14, 2012) (denying certification where "regardless of how the

court rules on an appeal" certain claims would still proceed); *Rhee-Karn v. Lask*, No. 15 Civ.

9946, 2023 WL 12188505, at *1 (S.D.N.Y. July 14, 2023).

## CONCLUSION

For the above reasons, the Court denies Macioce's motion to certify the Decision,

Dkt. 58, for interlocutory appeal.  The Clerk of the Court is respectfully directed to terminate the

motion pending at docket 59.  This case remains stayed pending the resolution of arbitration.


SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge


Dated: June 23, 2026
       New York, New York


11